**In re Robert R. YOUNG, Jr., Debtor.**

**Bankruptcy No. 96–12349.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Nov. 21, 1997.

Michael Tabor, Jackson, TN, for Debtor.

Linda L. Moore, Nashville, TN, for Tennessee Department of Revenue.

## MEMORANDUM OPINION AND ORDER RE DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY THE TENNESSEE DEPARTMENT OF REVENUE

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on this matter on October 20, 1997. FED.R.BANKR.P. 9014. Pursuant to 28 U.S.C. § 157(b)(2), this matter is a core proceeding. After reviewing the testimony from the hearing and the record as a whole, the Court makes the following findings of facts and conclusions of law. FED.R.BANKR.P. 7052.

### I. FINDINGS OF FACT

The facts of this case are largely undisputed. The debtor, Robert Young, Jr., ("Young"), is an OB/GYN who has practiced at the Union City Women's Clinic for over thirty years. While engaging in his medical career, Young also invested in several food-related corporations in and around the Jackson area. The corporate entities Young invested in were T & Y Foods, Inc., Bags, Inc., Pacer Foods, Inc., and Jackson Restaurant Group, Inc. It is Young's involvement with this last corporation, Jackson Restaurant Group, Inc., ("JRG") which is the subject of the dispute before the Court today.

In 1994, Young held an interest in the Bonanza restaurant on Highland Avenue in Jackson. Although it had proven to be a profitable investment in previous years, Bonanza's business began to drop off and Young decided to convert the buffet-style restaurant into some other type of business venture. At around the same time of making this decision, Young met an individual named Hutchison Utt ("Utt"), through a mutual friend while on vacation. Utt was one of the principle owners of a corporation known as Boston Hospitality Group, Inc., ("BHG"), which served as the franchising authority for a chain of restaurants called Boston Beanery Restaurant and Tavern ("Restaurant"). After discussing the possibilities of such restaurant in Jackson, Young and Utt entered into an agreement to convert the Bonanza into a Boston Beanery Restaurant. Utt brought in his business partner in BHG, Mike Audi, to participate in this conversion.

Utt, Audi, and Young formed Jackson Restaurant Group, Inc., and incorporated the venture in Ohio to do business as the Boston Beanery Restaurant and Tavern. According to the corporate charter of JRG, Young was the president, Utt was the vice-president and secretary and Audi was the vice-president and treasurer. The three men invested in JRG as individuals. None of the other corporations the three were involved in invested in JRG. The conversion of Bonanza was completed in early 1995 and JRG opened Boston Beanery Restaurant and Tavern on April 4, 1995.

Because none of Young's other three corporations were involved in the full service restaurant industry, Young decided to take a hands-off approach to the management of Boston Beanery. Accordingly, JRG contracted with Utt and Audi's Boston Hospitality Group, Inc., to manage and operate the new restaurant. BHG received 3% of the net income of the restaurant each month as a management fee and $800.00 each month as an accounting fee. Neither JRG nor Young had any control or responsibilities with regards to Boston Beanery. Utt and Audi were the sole individuals responsible for the management and operation of the new restaurant.

According to his uncontradicted testimony, Young did not have any authority to hire or fire employees at Boston Beanery. Young

also testified that he did not have any responsibility for preparing or filing tax returns or for calculating sales tax for the restaurant or JRG. Young also did not have any check writing authority for either the restaurant or JRG. Young never signed any of the tax returns for the restaurant or JRG, nor did he ever see any of the returns filed by either entity.

Hugh Johns, Young's General Manager for his other restaurant-related corporations, also appeared at the hearing. Johns testified that even though Young was more involved in the managing of his other investments, Young had no management involvement with Boston Beanery. Johns additionally testified that from time to time he would visit Boston Beanery and would discuss how business was going there. Johns would then relay this information to Young. Young did not, however, ever act on any of the information Johns gave to him. At all times, Young possessed a completely hands-off approach to Boston Beanery, trusting the management skills of BHG, Inc., and the business expertise of Utt and Audi. Without notifying Young, Utt and Audi closed Boston Beanery and left town sometime in 1996. Prior to this time, neither Utt nor Audi had informed Young that there was a problem with the state sales tax.

Young filed his chapter 11 bankruptcy petition on July 25, 1996. On March 2, 1997, the Tennessee Department of Revenue filed a proof of claim in the amount of $39,148.53 for pre-petition sales and use taxes for April, June, July, August, September, October, November, December of 1995 and January and February of 1996. TDR also alleged that Young had not filed tax returns for Boston Beanery for this same time period. According to Young's uncontradicted testimony, this was the first knowledge Young had of the delinquency of Boston Beanery's taxes.

Young filed an objection to TDR's proof of claim on September 4, 1997, in which he asserted that he is not liable for the payment of taxes for Boston Beanery pursuant to T.C.A., § 67–1–1443. In their response to this objection, TDR alleged that it has authority to collect the delinquent taxes from

Young under T.C.A. §§ 67–1–1438 and 67–6–517.

## II. CONCLUSIONS OF LAW

T.C.A. § 67–1–1443 provides that:

(a) Any person required to collect, truthfully account for, and pay over any tax collected from customers of any taxpayer, who willfully fails to truthfully account for and pay over any such tax collected, or who willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for the total amount of the tax evaded, or not accounted for and paid over, along with penalties and interest.

(b) As used in this section:

(1) "Person" includes an officer or employee of a corporation, who as such officer or employee is under a duty to perform the act in respect of which the violation occurs: and

(2) "Willfully" is limited to material and informed participation in the diversion of such collected funds to a source other than to the state.

T.C.A. § 67–1–1443. Despite diligent efforts, this Court has been unable to find any Tennessee cases which discuss the scope, breadth and meaning of this statute. What the Court did find, however, was a plethora of cases which interpret an almost identical Internal Revenue Code section. Because there is no interpretation of the state statute and because the federal one is so similar, this Court elects to seek guidance from the cases interpreting I.R.C. § 6672 in deciding the case at bar.

Section 6672 of the Internal Revenue Code provides that:

(a) General Rule—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, ...

26 U.S.C. § 6672(a). Section 6671 of the Internal Revenue Code defines "person" as used in § 6672 to mean "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). The Sixth Circuit has had numerous opportunities to interpret these statutes and has consistently held that in order to determine whether or not someone can be held liable for unpaid taxes under § 6672, a court must first find that the person is one who is required to "collect, truthfully account for, and pay over" taxes for a certain entity. *Gephart v. United States,* 818 F.2d 469, 473 (6th Cir.1987) (per curiam); *McGlothin v. United States,* 720 F.2d 6, 8 (6th Cir.1983). In so holding, the Sixth Circuit has further held that the determination of whether or not someone is a "responsible person" under the statute is an extremely fact-specific inquiry:

> [T]he test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors ... Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of Taxes withheld from the wages of employees are: (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (3) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation. More than one person can be a responsible officer of a corporation. Essentially, liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances. It is basically a factual inquiry. Generally, such a person is one "with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the

corporation's failure to pay over its taxes" or more explicitly, one who has "authority to direct payment of creditors."

*Gephart,* 818 F.2d at 473 (6th Cir.1987) (per curiam) (citations omitted) (quoting *Barrett v. United States,* 217 Ct.Cl. 617, 580 F.2d 449, 452 (1978)):

▇ Based on the factors cited by the Sixth Circuit it is patently clear that Young is not the person responsible for payment of the delinquent state sales taxes. Young did not have any authority to sign checks for the corporation. Young did not take any part in the hiring or firing of employees. According to the by-laws of JRG, Young was neither the secretary nor the treasurer. Young simply did not make any financial decisions for Boston Beanery Restaurant and Tavern. Additionally, Young did not ever prepare, sign or even see any of the tax returns for the restaurant.

There is further support for not holding Young responsible for Boston Beanery's delinquent state sales taxes found in the case of *Barrett v. United States,* 217 Ct.Cl. 617, 580 F.2d 449 (1978). In *Barrett,* the court found that the plaintiff was not the person responsible for the payment of corporate payroll taxes under § 6672. Like the debtor in the case at bar, Barrett was listed on the articles of incorporation as a director for a moving company she owned with her husband known as Barrett's Transfer and Storage, Inc. Despite this designation as a director of the corporation, Barrett worked full time for the federal government while her husband "ran the company with an iron hand." *Id.,* 580 F.2d at 450. Barrett's husband appointed officers at will, had final authority on hiring and firing employees, negotiated all contracts for the company, ordered supplies and dealt with all creditors. Despite his best efforts, however, Barrett's husband turned out to be an ineffective manager. Soon, creditors and employees began to refuse checks signed by him and as a result, Barrett was given authority to write checks for the corporation. *Id.* at 451.

The check writing authority given to Barrett by her husband was not something Barrett could exercise any control over however.

The proof presented at Barrett's trial showed that Barrett was berated into signing checks by her husband. Although she was the one who physically signed the checks, it was her husband who was still making the decisions about to whom the money was going. *Id.* The court further found that Barrett had very little to do with the day-to-day running of the company:

> Plaintiff had no responsibility for making up the payroll. She had no authority over payment of the salaries of company employees. Creditors did not ask for her when inquiring about being paid. She had no responsibility for the preparation of tax returns for the company, nor did she sign any returns. Plaintiff did not negotiate company contracts, bill customers, order supplies or hire and fire employees.

*Id.* at 453. Looking to factors similar to those cited by the Sixth Circuit in the *Gephart* opinion, the court held that Barrett was not responsible for payment of the taxes. *Barrett,* 580 F.2d at 454.

Young's involvement with the Boston Beanery is almost identical to the facts in Barrett. In fact, by virtue of signing checks, Barrett was more involved with her company than Young was with his. Young had nothing at all to do with the restaurant except a financial investment. The entire time Boston Beanery was open, Young was occupied on a full-time basis with his medical practice. Not only did he choose not to be involved with the management and operation of the restaurant, he also simply did not have the time.

By analogy to the Sixth Circuit's interpretation of the federal tax statute, as well as the similarity to the *Barrett* case, this Court finds that Young is not the person the Tennessee Department of Revenue can look to for payment of the delinquent state sales taxes of Boston Beanery Restaurant and Tavern. As a result, the debtor's objection to the proof of claim of the TDR will be sustained under T.C.A. § 67–1–1443 and the claim of TDR will be disallowed. An order will be entered in accordance therewith.

## III. ORDER

It is therefore **ORDERED** that the debtor's Objection to the Proof of Claim filed by the Tennessee Department of Revenue is SUSTAINED. It is **FURTHER ORDERED** that the Tennessee Department of Revenue's claim in the amount of $39,148.53 is disallowed.

**IT IS SO ORDERED.**